UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  1:18-cv-20374-WILLIAMS

MIKE ELBERT NEAL,

      Plaintiff,                                 **JURY TRIAL DEMANDED**

v.

LIEUTENANT L. WILSON, OFFICER E.
COBARCO, CHIEF ANGELA LAWRENCE,
OFFICER B. CELEIDA, and COUNSELOR C.
JR. TOLLIVER.

      Defendants.

_____/

## THIRD AMENDED COMPLAINT

Mike Elbert Neal ("Mr. Neal"), by and through his undersigned counsel, files this Third Amended Complaint seeking monetary damages, punitive damages, attorneys' fees and costs against Defendants Officer L. Wilson ("Wilson"), Officer E. Cobarco ("Cobarco"), Chief Angela Lawrence ("Lawrence"), Lieutenant B. Celeida ("Celeida"), and Counselor C. Jr. Tolliver ("Tolliver") (collectively the "Defendants"). In support thereof, Mr. Neal states as follows:

## NATURE OF THE CASE

1.      This Third Amended Complaint is being filed against employees and agents of the State of Florida who caused multiple injuries to Mr. Neal, a pre-trial detainee in the custody of the Florida Department of Corrections, through their deliberate indifference to known significant risks that threatened Mr. Neal's safety, their deliberate indifference to his serious medical needs, and

their acts of malfeasance that prevented Mr. Neal from contesting the unlawful conditions of his confinement.

2.      The Defendants deprived Mr. Neal of his constitutional rights under the Fourteenth Amendment of the Federal Constitution and 42 U.S.C. § 1983.

3.      As such, Mr. Neal now files the instant action seeking redress for the numerous injuries he sustained due to the acts and omissions of Defendants.

<u>**JURISDICTION AND VENUE**</u>

4.      This action arises under the Constitution and the laws of the United States of America, including Article III, Section of 1 of the U.S. Constitution, and is brought pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 42 U.S.C. § 1983, and 42 U.S.C. § 1988.

5.      The claims set forth in this Complaint arise from the Fourteenth Amendment to the United States Constitution because Mr. Neal was a pre-trial detainee at all times relevant hereto.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims herein all occurred in Miami-Dade County, Florida.

7.      All Defendants are subject to personal jurisdiction in this Court.

<u>**EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER 42 U.S.C. § 1997e(a)**</u>

8.      Pursuant to 42 U.S.C. § 1997e(a), the Prison Litigation Reform Act ("PLRA"), prisoners must properly exhaust available administrative remedies prior to filing a Complaint under 42 U.S.C. § 1983.

9.      However, administrative remedies are considered unavailable and the exhaustion requirement is lifted where the conduct of jail officials obstructs or prevents a prisoner's attempts to exhaust administrative remedies.

10.     Administrative remedies are considered unavailable, for example, where prison officials prevent the filing of grievances, do not respond to a prisoner's grievances, or issue threats of substantial retaliation for pursuing a grievance.

11.     Despite his numerous attempts to comply with the grievance procedures in place at the Miami-Dade County Corrections and Rehabilitation Department, Mr. Neal's attempts to exhaust available administrative remedies were thwarted by the actions of prison officials, thereby rendering these administrative remedies unavailable to Mr. Neal.

12.     Although the Inmate Grievance Procedures of the Miami-Dade Corrections and Rehabilitation Department provide that there is no time limit to file grievances alleging ongoing abuse on an inmate, many of Mr. Neal's grievances were rejected as untimely.

13.     The administrative remedies at the Miami-Dade County Corrections and Rehabilitation Department were rendered unavailable to Mr. Neal due to the following acts of malfeasance by prison officials at the Metro West Detention Center:

   a.   The rejection of Mr. Neal's grievance complaints on the ground that they were untimely, despite the fact that the Inmate Grievance procedures contain a clear time limitation exception with regards to grievance complaints alleging abuse;

   b.   Constantly transferring Mr. Neal between Metro West and TGK detention center to prevent the timely submission of grievance complaints; and

   c.   Defendants Lawrence's and Wilson's maliciously filing arson charges against Mr. Neal in retaliation for filing grievances in this action.

## THE PARTIES

14.     At all times relevant to this action, Mr. Neal was a pre-trial detainee at the Miami-Dade County Corrections and Rehabilitation Department's Metro West Detention Center ("Metro West"), 13850 N.W. 41 Street, Miami, Florida 33178.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

15.     At all times relevant to this action, Defendant Wilson was a correctional officer at Metro West Detention Center and an employee of Miami-Dade County.  At all times relevant to this action, Mr. Wilson was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

16.     At all times relevant to this action, Defendant Captain Lawrence[1] was a correctional officer at Metro West Detention Center and an employee of Miami-Dade County.  At all times relevant to this action, Captain Lawrence was acting within the course and scope of her employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

17.     At all times relevant to this action, Defendant Celeida was a correctional officer at Metro West Detention Center and an employee of Miami-Dade County.  At all times relevant to this action, Celeida was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

18.     At all times relevant to this action, Defendant Cobarco was a correctional officer at Metro West Detention Center and an employee of Miami-Dade County.  At all times relevant to this action, Cobarco was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

---

[1] Since the filing of the original complaint Captain Angela Lawrence has been promoted to Chief Angela Lawrence.

LEÓN COSGROVE, LLP

255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

19.     At all times relevant to this action, Defendant Tolliver was a correctional officer at Metro West Detention Center and an employee of Miami-Dade County.  At all times relevant to this action, Tolliver was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

20.     With respect to each of the individual defendants named in paragraphs 15 through 19, Mr. Neal is suing the defendants in their individual capacities.

21.     All conditions precedent to the filing of this action have occurred, accrued, or have been waived as a matter of law.

### FACTS COMMON TO ALL CLAIMS

22.     Mr. Neal is presently a pre-trial detainee at the Metro West Detention Center.

23.     The events that gave rise to the claims in this Complaint occurred while Mr. Neal was confined at Metro West and at Turner Guilford Knight Correctional Center ("TGK").

24.     Mr. Neal is a disabled individual who suffers from multiple chronic injuries and requires a cane to walk from place to place. More specifically, Mr. Neal suffers from two torn shoulder rotator cuffs, a permanent lower back injury and a permanent injury in his left knee for which he always wears a leg brace. Altogether, these injuries severely inhibit Mr. Neal's daily activities.

**Incident with Inmate Raymond Carr**

25.     On January 12, 2017, Captain Lawrence and Officer Wilson visited TGK to speak with inmates who were housed there.

26.     As Mr. Neal attempted to approach Captain Lawrence, Inmate Raymond Carr ("Carr"), a prisoner who had previously threatened and attacked Mr. Neal, physically prevented Mr. Neal from approaching Captain Lawrence.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

27.     Captain Lawrence witnessed Inmate Carr harassing Mr. Neal, and she walked toward both inmates.

28.     Mr. Neal informed Captain Lawrence that Inmate Carr had been previously separated from him because Inmate Carr and another prisoner attempted to assault him in the past.

29.     Mr. Neal further informed Captain Lawrence that he feared for his safety because, in the event of a future physical assault, he would be unable to defend himself due to his various chronic injuries.

30.     Mr. Neal then urged Captain Lawrence to transport him back to the Metro West medical unit, where he could receive treatment for his recent surgery and be separated from Inmate Carr, who represented a constant threat to his safety.

31.     Despite her knowledge of the threatened harm to Mr. Neal, as well as his physical impairments, Captain Lawrence ignored Mr. Neal's repeated requests to be transferred, and she simply told Inmate Carr to not bother Mr. Neal.

32.     Moreover, Captain Lawrence did not inform any other correctional officer about Inmate Carr's hostilities towards Mr. Neal.

33.     When Captain Lawrence failed to take action, Mr. Neal then approached Officer Wilson to repeat his request for a transfer to the medical unit because he feared for his safety.

34.     Officer Wilson rejected Mr. Neal's request to be transferred, ignored Mr. Neal's explanation regarding the threatened harm from another inmate and threatened to place Mr. Neal in isolated confinement if Mr. Neal was involved in any problems.

35.     The following day, on January 13, 2017, Mr. Neal returned from court to his prison cell.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

36.    Defendant Celeida was the corrections officer on duty in the unit where Mr. Neal's cell was located.

37.    While Mr. Neal was sitting on his bunk, Inmate Carr approached Mr. Neal to harass him, calling him, among other derogatory terms, a snitch.

38.     Mr. Neal felt threatened by Inmate Carr's menacing behavior, so he requested that Officer Celeida separate the two inmates.

39.    When Officer Celeida approached Mr. Neal's cell, Mr. Neal explained that Inmate Carr was presently harassing him in a manner that could escalate to physical violence, and he explained that Inmate Carr had threatened and attacked him multiple times in the past.

40.    Officer Celeida disregarded Mr. Neal's distress and requests to be transferred.

41.    Following this exchange, Mr. Neal attempted to go to the restroom, but Inmate Carr deliberately obstructed Mr. Neal's path out of his cell to threaten him. Inmate Carr warned Mr. Neal that he would harm Mr. Neal physically if Mr. Neal repeated complaints about him to prison officials.

42.    Mr. Neal immediately reported Inmate Carr's threat to Officer Celeida, but Officer Celeida ignored him again.

43.    After overhearing Mr. Neal's complaints to Officer Celeida, Inmate Carr spontaneously ran up behind Mr. Neal and struck him in the head, knocking him over on Officer Celeida's desk.

44.    Inmate Carr struck Mr. Neal multiple times on the face and head, causing significant bruising and lacerations.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

45.     As Mr. Neal attempted to defend himself from Inmate Carr's attack, Officer Celeida, who was aware of Mr. Neal's physical impairments, simply watched as this assault unfolded on his desk.

46.     During the attack, Mr. Neal asked Officer Celeida to intervene to stop Inmate Carr's attack, but Officer Celeida simply ignored Mr. Neal.

47.     Even though Inmate Carr's attack on Mr. Neal lasted for over a minute, Officer Celeida did nothing to stop it.

48.     After Inmate Carr became exhausted from striking Mr. Neal, Mr. Neal crawled to his cell, where he sat in pain from the injuries Inmate Carr inflicted on him.

49.     Because of Inmate Carr's attack, Mr. Neal's face and head were lacerated and significantly swollen.  These injuries caused him substantial pain and anguish even weeks after the assault. Mr. Neal also experienced head trauma, dizziness, disorientation and an inability to walk immediately following the attack.

50.     In addition to the harm mentioned in the preceding paragraph, Inmate Carr's assault aggravated multiple chronic injuries that Mr. Neal suffers from in various parts of his body, including Mr. Neal's permanently injured left knee, shoulders and lower back.

51.     Only after Inmate Carr completed his attack on Mr. Neal, did Officer Celeida seek assistance.  As a result of Celeida's deliberate delay, Mr. Neal sustained the various injuries mentioned in the preceding paragraphs and was transferred on a stretcher to the Medical Clinic North by emergency medical personnel.

52.     If Officer Celeida had intervened during the attack on Mr. Neal, Inmate Carr would not have been able to injure Mr. Neal to the extent that he did.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

53.     Immediately following the assault, on January 14, 2017, Mr. Neal filed a grievance with Correctional Officer Mathews, stating his intention to file criminal charges against Inmate Carr. *See* attached Exhibit "A."

54.     Officer Celeida did not file a disciplinary report against Inmate Carr for his assault on Mr. Neal. Instead, while Mr. Neal received medical treatment for his injuries, Officer Celeida maliciously filed a disciplinary report against Mr. Neal, charging Mr. Neal as the aggressor for the assault in which he had been victimized.

55.     Due to Officer Celeida's misrepresentations on this disciplinary report, Mr. Neal was placed in punitive confinement on January 13, 2017.

**Deprivation of Mr. Neal's Due Process Rights by Prison Officials**

56.     Notably, Mr. Neal did not receive a "twenty-four hour notification form" prior to his placement in punitive confinement, in violation of the Miami-Dade Corrections Standard Operating Procedure.

57.     Before Mr. Neal was placed in punitive confinement, he urged Officer Wilson to review the unit video cameras, which would have revealed that Mr. Neal was attacked by Inmate Carr while Officer Celeida simply watched.

58.     Although Officer Wilson's review of the unit video camera footage would have easily disproven Officer Celeida's false narrative about the day of the assault, Officer Wilson simply refused to do so and proceeded to place Mr. Neal in punitive confinement.

59.     Mr. Neal promptly filed a grievance against Officer Wilson, complaining about Wilson's refusal to review the unit video camera footage.

60.     On January 19, 2017, Officer Tolliver brought numerous forms to Mr. Neal's cell to receive his signature. Officer Tolliver did not describe the nature or content of the forms.

Instead, he asked Mr. Neal to execute the forms while only exposing their signature lines through Mr. Neal's cell door flap.

61.     Mr. Neal requested that Officer Tolliver describe the nature and content of the forms prior to placing his signature on them, but Officer Tolliver became upset, refused to describe the forms and walked away.

62.     As Officer Tolliver walked away, Mr. Neal requested a postponement of his disciplinary hearing to gather evidence for his defense against the false charges that Officer Celeida had filed against him.  Officer Tolliver, however, simply ignored Mr. Neal.

63.     Following this exchange between Mr. Neal and Officer Tolliver, Officer Tolliver held a disciplinary hearing without Mr. Neal's presence and without providing Mr. Neal with an opportunity to present evidence in his defense.

64.     Based on Officer Celeida's disciplinary report, Officer Tolliver concluded during the disciplinary hearing that Mr. Neal was to be held in punitive confinement for thirty days.

65.     Officer Tolliver did not immediately provide Mr. Neal with the results of this disciplinary hearing, thereby preventing Mr. Neal from filling an appeal within the two-day limitation set forth in the Miami-Dade Corrections and Rehabilitation Department's policies and preventing him from being aware of how long he was to be held in punitive confinement.

66.     On October 28, 2019, Mr. Neal filed a grievance against Officer Tolliver, asserting that Officer Tolliver had conducted a disciplinary hearing and placed Mr. Neal in punitive confinement without his presence, without notice, and without providing him with an opportunity to contest the charges against him. *See* attached Exhibit "B."

67.     On January 27, 2017, Mr. Neal attempted to file a disciplinary appeal with Officer Cobarco to contest the findings of the disciplinary hearing.  Officer Cobarco disregarded Mr. Neal's request.

68.     On October 28, 2019, Mr. Neal filed a grievance complaint against Officer Cobarco, alleging that Cobarco had denied him due process when he refused to accept Mr. Neal's disciplinary appeal and refused to allow Mr. Neal to contest the disciplinary hearing's findings. *See* attached Exhibit "C."

69.     On October 29, 2018, after almost two years of being held in punitive confinement, Mr. Neal filed a grievance complaining that prison officials did not conduct bi-weekly reviews to determine whether Mr. Neal's continued confinement in punitive segregation was warranted and requesting that he be immediately reinstated to the general prison population. *See* attached Exhibit "D."

70.     Without providing any elaboration, a prison official, who is not a party to this action, rejected Mr. Neal's grievance and indicated that Mr. Neal was to remain in punitive confinement until further notice because he was "classified as a safety cell inmate."

71.     After Mr. Neal was held in punitive segregation for over a year, he spoke with Officer Wilson to express his view that he had been punished unjustly.

72.     Officer Wilson responded that Mr. Neal's "black-ass" would never be released from punitive confinement.

73.     Mr. Neal then filed a grievance complaint against Officer Wilson on October 25, 2019, because he had facilitated Mr. Neal's illegal placement in punitive confinement without notice, a hearing, or any due process. *See* attached Exhibit "E."

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

74.     In retaliation, Officer Wilson had Mr. Neal transferred multiple times between TGK and Metro West to prevent him from completing the grievance procedures and to prevent him from promptly contesting his illicit placement in isolated confinement.

75.     Notwithstanding the disciplinary hearing's imposition of a thirty-day punitive confinement penalty, Mr. Neal was held in isolation for longer than a year, without notice, without his presence at a hearing, and without an opportunity to properly contest his illegal punishment.

76.     On June 8, 2017, almost five months after Mr. Neal had been unlawfully held in punitive segregation, Mr. Neal filed a grievance with Correctional Officer Guerra to challenge his indefinite placement in punitive confinement. Mr. Neal asserted that his indefinite confinement in punitive segregation without notice, his presence at a hearing, or an opportunity to contest his punishment, constituted an ongoing constitutional violation. *See* attached Exhibit "F."

77.     On October 23, 2019, after being transferred between TGK and Metro West numerous times for over two years, Mr. Neal was finally able to file a grievance against Officer Celeida for his malfeasance on the day that Mr. Neal was assaulted by Inmate Carr. *See* attached Exhibit "G."

78.     Mr. Neal also filed a grievance on October 23, 2019, alleging that Mr. Neal's injuries on January 13, 2017, resulted from Officer Wilson's and Officer Lawrence's refusal to separate Inmate Carr and Mr. Neal. *See* attached Exhibit "H."

79.     Despite the fact that there is no time limit to file grievances alleging ongoing abuse of an inmate, Mr. Neal's grievances were all rejected as untimely.

80.     Notably, each time Mr. Neal's grievances were rejected as untimely, the prison officials who rejected his grievances ignored Mr. Neal's contention that the Inmate Grievance

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Procedures did not impose a time limitation on filing grievances that contained allegations of ongoing abuse.

81.     Although Defendants Lawrence, Cobarco and Wilson possessed the authority to remove Mr. Neal from his unlawful placement in punitive confinement at any time and were aware that Mr. Neal had been held in isolation for much longer than what the disciplinary hearing had prescribed, they left Mr. Neal in isolation indefinitely.

**Deliberate Indifference by Prison Officials to Mr. Neal's Serious Medical Needs**

82.     In addition to the chronic physical injuries that were mentioned in Paragraph 18, Mr. Neal suffers from various internal health issues, including high blood pressure, diabetes, and mental illness, all of which are permanent and irreversible.

83.     When Mr. Neal was transferred to Metro West in June 2016, facility doctors ordered that he be placed in medical housing, so that his chronic conditions could be constantly monitored.

84.     Facility doctors also ordered that Mr. Neal was to receive periodical physical therapy treatment at the Jackson Memorial Treatment Center following his knee surgery on September 20, 2018.

85.     On various occasions, Mr. Neal asked Captain Lawrence and Officer Wilson to transfer him, in accord with the orders of facility doctors, to the prison's medical housing, but they refused every time without providing justification.

86.     Following Mr. Neal's knee surgery, Mr. Neal repeated his request to Captain Lawrence and Officer Wilson to be transferred to the medical housing facility. Again, without providing any justification, Captain Lawrence and Officer Wilson rejected Mr. Neal's request and left him in punitive confinement.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

87.     Due to Captain Lawrence's and Officer Wilson's unjustified refusal, Mr. Neal did not receive his pain medication as often as he should and his knee did not recover properly from the surgery.

88.     As such, Mr. Neal's physical impairments were aggravated by Captain Lawrence's and Officer Wilson's deliberate disregard of his medical needs.

89.     On January 24, 2019, and again on October 24, 2019, Mr. Neal filed grievances against Captain Lawrence and Officer Wilson because they continued to house him in punitive confinement, even though (i) he posed no threat to inmates or prison officials, (ii) facility doctors had ordered that he be placed in the medical housing unit, (iii) Mr. Neal's recently-operated knee could not be properly treated while he was in punitive confinement, and (iv) Mr. Neal's various internal health conditions could not be properly treated while he was in punitive confinement. *See* attached Exhibits "I" and "J."

90.     These grievances, just as the previous ones filed by Mr. Neal, were rejected as untimely despite the fact that Mr. Neal's indefinite placement in punitive confinement constituted an ongoing violation and the Inmate Grievance procedures contain a clear time limitation exception with regards to grievance complaints alleging abuse.

91.     Due to these unjustified and unlawful conditions of confinement, Mr. Neal's mental health has been adversely impacted.

92.     In retaliation for filing the instant lawsuit, Defendants Officer Lawrence and Officer Wilson maliciously filed charges against Mr. Neal for first degree arson, alleging that Mr. Neal deliberately started a fire in his cell.

93.     Upon information and belief, Officer Lawrence instructed Ms. Reid, a mental health employee at Metro West, to withhold any legal reading materials requested by Mr. Neal.

14

**COUNT ONE: FAILURE TO INTERVENE TO PREVENT SERIOUS BODILY HARM
IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT OF THE
UNITED STATES CONSTITUTION
(42 U.S.C § 1983)
(Against Defendant Celeida)**

94.     Mr. Neal repeats and re-alleges Paragraphs 1 through 93 above, as if fully set forth herein.

95.     This is a cause of action for violation of civil rights under 42 U.S.C. § 1983 against Officer Celeida in his individual capacity.

96.     At all relevant times, Mr. Neal was being held in custody as a pre-trial detainee.

97.     As a pre-trial detainee, Mr. Neal has a clearly established constitutional right to due process under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  This right to due process includes the right to have prison officials intervene to prevent ongoing harm to prisoners where they have the ability and opportunity to do so.

98.     As such, prison officials who fail to protect a prisoner from a known threat of harm posed by another inmate are subject to liability for their malfeasance.

99.     On or about January 13, 2017, Inmate Carr assaulted Mr. Neal on top of Officer Celeida's desk, causing Mr. Neal substantial bodily harm and anguish.  Officer Celeida was present during the attack and had the chance to stop it.

100.    Defendant Celeida, as a correctional officer at Metro West, was responsible for maintaining order among and ensuring the safety of inmates.

101.    It was Officer Celeida's duty, therefore, to intervene promptly when Inmate Carr attacked Mr. Neal immediately in front of him on his desk.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

102.     Defendant Celeida was deliberately indifferent to Inmate Car's attack on Mr. Neal, and the concomitant substantial risk of injury to Mr. Neal, when he failed to intervene during Inmate Carr's attack on Mr. Neal.

103.     If Defendant Celeida had not been deliberately indifferent to the imminent threat of harm towards Mr. Neal, Inmate Carr would not have been able to assault Mr. Neal or injure him to the severe extent that he did.

104.     Accordingly, the injuries suffered by Mr. Neal on January 13, 2017, were a direct result of Defendant Officer Celeida's deliberate indifference to the substantial threat of bodily harm against Mr. Neal.

**WHEREFORE,** Mr. Neal requests judgment in his favor and against Defendant Celeida, individually, for:

a.     Actual and compensatory damages;

b.     Punitive damages;

c.     An award of attorneys' fees and costs; and

d.     Any other relief this court deems just and proper.

**COUNT TWO: FAILURE TO PROTECT FROM RISK OF SERIOUS BODILY HARM IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**(42 U.S.C. § 1983)**
**(Against Defendants Officer Lawrence and Officer Wilson)**

105.     Mr. Neal repeats and re-alleges Paragraphs 1 through 93 above, as if fully set forth herein.

106.     This is a cause of action for violation of civil rights under 42 U.S.C. § 1983 against Captain Lawrence and Officer Wilson in their individual capacities.

107.     At all relevant times, Mr. Neal was being held in custody as a pre-trial detainee.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

108.     Based on Inmate Carr's previous instances of violence and threats directed towards Mr. Neal, there was a substantial risk that Inmate Carr would seriously harm Mr. Neal in the future.

109.     On January 12, 2017, Mr. Neal informed Captain Lawrence and Officer Wilson that Inmate Carr had been previously separated from him because Inmate Carr and another prisoner attempted to assault him in the past.

110.     Mr. Neal further informed Defendants Officer Wilson and Captain Lawrence that he feared for his safety because, in the event of a future physical assault, he would be unable to defend himself due to his various chronic injuries.

111.     Mr. Neal then urged both Officer Wilson and Captain Lawrence to transport back to the Metro West medical unit, so that he could be separated from Inmate Carr.

112.     Accordingly, Defendants Captain Lawrence and Officer Wilson knew of this substantial risk because they had been told that Inmate Carr had threatened and physically attacked Mr. Neal.

113.     Despite her knowledge of the threatened harm to Mr. Neal, as well as his physical impairments, Captain Lawrence ignored Mr. Neal's repeated requests to be transferred, and she simply told Inmate Carr to not bother Mr. Neal.

114.     Despite his knowledge of the threatened harm to Mr. Neal, as well as his physical impairments, Officer Wilson also ignored Mr. Neal's repeated requests to be transferred away from Inmate Carr.

115.     Moreover, neither Captain Lawrence nor Officer Wilson informed any other correctional officer about Inmate Carr's hostilities towards Mr. Neal.

116.     On or about January 13, 2017, Inmate Carr assaulted Mr. Neal causing him substantial bodily harm and anguish.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

117.     Captain Lawrence's and Officer Wilson's failure to protect Mr. Neal directly and proximately caused Mr. Neal's physical injuries, emotional and psychological distress, mental anguish, and other non-economic damages which accrued in the past and which continue into the future.

**WHEREFORE,** Mr. Neal requests judgment in his favor and against Defendant Officers Lawrence and Wilson, individually, for:

a.     Actual and compensatory damages;

b.     Punitive damages;

c.     An award of attorneys' fees and costs; and

d.     Any other relief this court deems just and proper.

## COUNT THREE: DELIBERATE INDEFERENCE TO SERIOUS NEED OF MEDICAL CARE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (42 U.S.C. § 1983)
### (Against Defendants Captain Lawrence and Officer Wilson)

118.     Mr. Neal repeats and re-alleges Paragraphs 1 through 94 above, as if fully set forth herein.

119.     This is a cause of action for violation of civil rights under 42 U.S.C. § 1983 against Captain Lawrence and Officer Wilson in their individual capacities.

120.     At all relevant times, Mr. Neal was being held in custody as a pre-trial detainee.

121.     As a pre-trial detainee at the time of the events asserted in this action, Mr. Neal has a constitutional right to necessary medical care under the Fourteenth Amendment.

122.     Prison officials violate a detainee's constitutional right to necessary medical care where they are deliberately indifferent to a pre-trial detainee's known serious medical need.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

123.    Mr. Neal has multiple, serious medical needs, some due to external physical injuries and others due to chronic internal conditions.

124.    These serious medical needs, as developed below, have been diagnosed as medical conditions requiring treatment, or alternatively, are so obvious that even a lay person would recognize the need for medical care to be provided to Mr. Neal.

125.    Mr. Neal suffers from two torn shoulder rotator cuffs, a permanent lower back injury and a permanent injury in his left knee for which he always wears a leg brace. These injuries significantly impair Mr. Neal's daily activities and require constant medical treatment.

126.    Mr. Neal also suffers from high blood pressure, diabetes, and mental illness, all of which are permanent and irreversible.

127.    Following his knee surgery on September 20, 2018, Mr. Neal required more frequent medical treatment and monitoring to ensure an adequate recovery.

128.    Mr. Neal informed Defendants Lawrence and Wilson repeatedly for over two years about his serious medical needs.

129.    As such, Captain Lawrence and Officer Wilson were aware of Mr. Neal's various health conditions and that he could not receive adequate medical treatment while he was confined in punitive segregation; Defendants Lawrence and Wilson were aware that a doctor mandated Mr. Neal receive physical therapy to treat his recently-operated knee; and they were aware that Mr. Neal suffered from various internal chronic conditions that required constant monitoring.

130.    Captain Lawrence and Officer Wilson were also aware that, even if Mr. Neal had been fairly placed in punitive segregation, he was left there far longer than the thirty-day penalty that had been issued in the disciplinary hearing by Defendant Tolliver, which prevented Mr. Neal from receiving adequate treatment for his various ailments.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

131.     Captain Lawrence and Officer Wilson also knew that, given his medical condition, Mr. Neal could not possibly be a threat to the safety of inmates or prison officials, so as to justify his continued placement in punitive confinement.

132.     Captain Lawrence and Officer Wilson possessed the authority to immediately remove Mr. Neal from punitive confinement to receive the medical care he needed.

133.     Despite this, they simply left Mr. Neal in punitive segregation indefinitely, which caused harm to Mr. Neal's existing conditions.

134.     Captain Lawrence and Officer Wilson were deliberately indifferent to Mr. Neal's medical needs because they were aware of his medical necessity, there was no safety justification for refusing to transfer him to the medical housing unit, as prison medical personnel had ordered, and they disregarded Mr. Neal's various requests to be transferred.

135.     Due to the Defendants' deliberate indifference towards Mr. Neal's serious medical needs, Mr. Neal's existing chronic conditions were further aggravated, he experienced unnecessary excruciating pain and suffering, and his recently-operated knee did not heal properly.

**WHEREFORE,** Mr. Neal requests judgment in his favor and against Defendants Captain Lawrence and Wilson, individually, for:

a.     Actual and compensatory damages;

b.     Punitive damages;

c.     An award of attorneys' fees and costs; and

d.     Any other relief this court deems just and proper.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

**COUNT FOUR: INDEFINITE AND UNJUSTIFIED PLACEMENT IN PUNITIVE
CONFINEMENT WITHOUT DUE PROCESS IN VIOLATION OF THE FOURTH AND
FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION
(42 U.S.C. § 1983)
(Against Defendants Captain Lawrence and Officer Wilson)**

136.     Mr. Neal repeats and re-alleges Paragraphs 1 through 93 above, as if fully set forth

herein.

137.     This is a cause of action for violation of civil rights under 42 U.S.C. § 1983 against

Captain Lawrence and Officer Wilson in their individual capacities.

138.     At all relevant times, Mr. Neal was being held in custody as a pre-trial detainee.

139.     Punitive conditions may be imposed on pre-trial detainees if they further some

legitimate objective, such as maintaining safety, internal order or security within a prison.

140.     However, because extended placements in punitive confinement represent a

significant punishment beyond ordinary prison life, both pre-trial detainees and inmates are

entitled to due process prior to being placed in punitive segregation.

141.     The placement of a pre-trial detainee in punitive confinement cells violates the

Fourteenth Amendment where prison officials have imposed this punishment without adequate

justification and with deliberate indifference to a detainee's needs.

142.     Accordingly, Mr. Neal was entitled, pursuant to the Due Process Clause, to receive

notice and an opportunity to be heard prior to being placed in punitive segregation, and he could

only be held in punitive confinement if there was a legitimate governmental reason or temporary

administrative necessity for placing him there.

143.     Mr. Neal did not pose a threat to inmate or prison personnel safety, he was placed

in segregation indefinitely, he was never informed whether there was any means by which he could

be released from segregation, he was never given an update regarding his confinement status, his

complaints regarding his confinement status were disregarded, he was not advised of the evidence that supported his punishment in solitary confinement and prison officials did not provide him with an opportunity to contest his unlawful placement in punitive confinement.

144.    Captain Lawrence and Officer Wilson were aware that, even if Mr. Neal had been fairly placed in punitive segregation from the beginning of his confinement period, he was left there far longer than the thirty-day penalty that had been issued in the disciplinary hearing by Defendant Tolliver.

145.    As such, Mr. Neal's indefinite placement in punitive confinement was not reasonably tethered to a legitimate governmental goal and there was no administrative justification for housing him there, and it amounted to a violation of Mr. Neal's right to due process under the Federal Constitution.

146.    Captain Lawrence's and Officer Wilson's refusal to remove Mr. Neal from indefinite punitive confinement directly and proximately caused further aggravation to Mr. Neal's physical injuries, emotional and psychological distress, mental anguish, and other non-economic damages which accrued in the past and which continue into the future.

**WHEREFORE,** Mr. Neal requests judgment in his favor and against Defendants Lawrence and Wilson, individually, for:

a.    Actual and compensatory damages;

b.    Punitive damages;

c.    An award of attorneys' fees and costs; and

d.    Any other relief this court deems just and proper.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

## COUNT FIVE: INDEFINITE AND UNJUSTIFIED PLACEMENT IN PUNITIVE CONFINEMENT WITHOUT DUE PROCESS IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION
### (42 U.S.C. § 1983)
### (Against Defendants Officers Tolliver and Cobarco)

147.    Mr. Neal repeats and re-alleges Paragraphs 1 through 93 above, as if fully set forth herein.

148.    This is a cause of action for violation of civil rights under 42 U.S.C. § 1983 against Officers Tolliver and Cobarco in their individual capacities.

149.    At all relevant times, Mr. Neal was being held in custody as a pre-trial detainee.

150.    Punitive conditions may be imposed on pre-trial detainees if they further some legitimate objective, such as maintaining safety, internal order or security within a prison.

151.    However, because extended placements in punitive confinement represent a significant punishment beyond ordinary prison life, both pre-trial detainees and inmates are entitled to due process prior to being placed in punitive segregation.

152.    The placement of a pre-trial detainee in punitive confinement cells violates the Fourteenth Amendment where prison officials have imposed this punishment without adequate justification and with deliberate indifference to a detainee's needs.

153.    Accordingly, Mr. Neal was entitled, pursuant to the Due Process Clause, to receive notice and an opportunity to be heard prior to being placed in punitive segregation, and he could only be held in punitive confinement if there was a legitimate governmental reason or temporary administrative necessity for placing him there.

154.    Mr. Neal did not pose a threat to inmate or prison personnel safety, he was placed in segregation indefinitely, he was never informed whether there was any means by which he could be released from segregation, he was never given an update regarding his confinement status, his

23

complaints regarding his confinement status were disregarded, he was not advised of the evidence that supported his punishment in solitary confinement and prison officials did not provide him with an opportunity to contest his unlawful placement in punitive confinement.

155.    Defendant Tolliver was aware that, even if Mr. Neal had been fairly placed in punitive segregation from the beginning of his confinement period, he was left there far longer than the thirty-day penalty that had been issued by the disciplinary hearing.

156.    Defendant Cobarco was also aware that Mr. Neal had been held far longer in punitive confinement than the thirty-day penalty that had been issued by the disciplinary hearing.

157.    As such, Mr. Neal's indefinite placement in punitive confinement was not reasonably tethered to a legitimate governmental goal and there was no administrative justification for housing him there, and it amounted to a violation of Mr. Neal's right to due process under the Federal Constitution.

158.    Defendant Tolliver violated Mr. Neal's right to due process when he conducted a disciplinary hearing without providing notice to Mr. Neal, without Mr. Neal's presence and without providing Mr. Neal with an opportunity to contest the findings of the hearing.

159.    Defendant Cobarco violated Mr. Neal's right to due process when he failed or refused to accept Mr. Neal's disciplinary appeal and offer evidence in support of Mr. Neal's placement in punitive confinement.

160.    Defendant Cobarco also violated Mr. Neal's right to due process when, without justification, he failed or refused to remove Mr. Neal from punitive segregation for an indefinite period.

161.    Officers Tolliver's and Cobarco's failure to provide Mr. Neal with due process prior to placing him in indefinite punitive confinement directly and proximately caused further

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

aggravation of Mr. Neal's physical injuries, emotional and psychological distress, mental anguish, and other non-economic damages which accrued in the past and which continue into the future.

     **WHEREFORE,** Mr. Neal requests judgment in his favor and against Defendant Officers Tolliver and Cobarco, individually, for:

a.     Actual and compensatory damages;

b.     Punitive damages;

c.     An award of attorneys' fees and costs; and

d.     Any other relief this court deems just and proper.

**JURY DEMAND**

     Mr. Neal demands a trial by jury on all issues so triable.

Dated:  03/17/2020             Respectfully submitted,

                     By: *John R. Byrne*
                     John R. Byrne
                     Florida Bar No. 126294
                     **León Cosgrove, LLP**
                     255 Alhambra Circle, Suite 800
                     Coral Gables, Florida 33133
                     Telephone:  (305) 740-1975
                     Facsimile:  (305) 437-8158
                     Email:  jbyrne@leoncosgrove.com
                     Email:  lburns@leoncosgrove.com

                     *Counsel for Mike Elbert Neal*

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM